UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA HUTCHINSON AND
JOHN VANDERPOOL, as Personal
Representatives of the Estate of
Jon Vanderpool, Deceased,

      Plaintiff,

vs.

Case No. 18-

Hon:

MUSKEGON RIVER YOUTH HOME, INC.,
DAWN KRUITHOFF, BRANDON BEARD,
JENNIFER BISSET, KENNETH VINCENT, JR.,
STEVE REED, DENNY ARMINGTON,
STAFF KYLE VINCENT, STAFF DANIEL CONKLIN,
STAFF ADAM BOZEMAN, SUSAN HAVELKA, and
MATTHEW LORENZ, Individually and in their Official
Capacities, Jointly and Severally,

      Defendants.

_____

GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
*FIEGER LAW*
Attorney for Plaintiffs
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
g.puzzuoli@fiegerlaw.com

_____

## **COMPLAINT AND JURY DEMAND**

There is no other civil action arising out the same
transaction or occurrence as alleged in this complaint,

and there have been zero (0) prior actions filed by this
Plaintiff concerning detention.

*/s/Gina U. Puzzuoli*
Gina U. Puzzuoli

NOW COMES Plaintiffs, LISA HUTCHINSON and JOHN VANDERPOOL, as Personal Representatives of the Estate of JON VANDERPOOL, deceased, by and through their attorneys, Fieger, Fieger, Kenney & Harrington, P.C., and for their Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1.     At all times relevant to this litigation, Plaintiffs' Decedent, JON VANDERPOOL, was a resident of Defendant, MUSKEGON RIVER YOUTH HOME, INC., located in Evart, Muskegon County, Michigan.

2.     Plaintiffs, LISA HUTCHINSON AND JOHN VANDERPOOL, are mother and father of the Decedent JON VANDERPOOL and were appointed Personal Representatives of the Estate of JON VANDERPOOL, Deceased (hereinafter "VANDERPOOL" or "Decedent").

3.     At all times relevant to this litigation, Defendant MUSKEGON RIVER YOUTH HOME, INC. was a foreign corporation conducting business in Muskegon County by acting as a private child caring institution and providing juvenile detention and treatment in Evart, Muskegon County, Michigan, and was responsible for the operation and supervision of staff there and responsible for the care and custody of individuals staying there, including this decedent.

4.     Upon information and belief, at all times relevant to this litigation, Defendant DAWN KRUITHOFF was the Director and Chief Administrator for the Defendant MUSKEGON RIVER YOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC., including this decedent. Her duties further included:  "Development and maintenance of the program, direct or delegated supervision of all staff, provide necessary structure and supervision to insure the safety of the children, ensure reports are correctly completed, and ensure meeting the standards of State Licensing." (Facility Job Description for Director/Chief Administrator and State Licensing Rule 400.4116).

5.     Upon information and belief, at all times relevant to this litigation, Defendant BRANDON BEARD was Lead Direct Care Staff for the Defendant MUSKEGON RIVER YOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

6.     Upon information and belief, at all times relevant to this litigation, Defendant JENNIFER BISSET was Compliance Supervisor for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there,

and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

7.      Upon information and belief, at all times relevant to this litigation, Defendant KENNETH VINCENT, JR. was Head Supervisor for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

8.      Upon information and belief, at all times relevant to this litigation, Defendant STEVE REED was Chief Executive Officer for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

9.      Upon information and belief, at all times relevant to this litigation, Defendant DENNY ARMINGTON was on staff for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

10.     Upon information and belief, at all times relevant to this litigation, Defendant KYLE VINCENT was appointed and acting as the Supervisor of Direct Care for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

11.     That Defendant KYLE VINCENT was not qualified to hold the position of Supervisor of Direct Care.

12.     Upon information and belief, at all times relevant to this litigation, Defendant ADAM BOZEMAN was Direct Care Staff for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

13.     Upon information and belief, at all times relevant to this litigation, Defendant SUSAN HAVELKA was Direct Care Staff for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

14.     Upon information and belief, at all times relevant to this litigation, Defendant DANIEL CONKLIN was Direct Care Staff for the Defendant MUKEGON RIVER YOUTH HOME, INC., and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

15.     Upon information and belief, at all times relevant to this litigation, Defendant MATTHEW LORENZ was Program Director for the Defendant MUSKEGON RIVERYOUTH HOME, INC. and in that capacity, among other duties, was directly responsible for the operation and supervision of the staff there, and responsible for the care and custody of individuals staying at Defendant MUSKEGON RIVER YOUTH HOME, INC. including this decedent.

16.     Defendant MUSKEGON RIVER YOUTH HOME, INC. is vicariously liable for the actions of their agents, staff members, contractors, employees and representatives, including but not limited to the Defendants listed herein for any and all of their actions with respect to this decedent.

17.     Defendants herein, identified as managers, supervisors and directors, including but not limited to, Defendants DAWN KRUITHOFF, JENNIFER BISSETT, KENNETH VINCENT, JR., STEVE REED, KYLE VINCENT, and MATTHEW LORENZ are directly liable for their negligent and grossly negligent actions and vicariously liable for the actions of their agents, staff members,

contractors, employees and representatives including, but not limited to the Defendants listed herein.

18.     At all times relevant to this litigation each and every Defendant herein was acting within the scope of his/her employment as agents, employees, staff members, contractors or representatives of Defendant MUSKEGON RIVER YOUTH HOME, INC.

19.     The events giving rise to this action occurred on or about August 9, 2017, in the City of Evart, Muskegon, Michigan.

20.     The amount in controversy is in excess of Twenty-Five Thousand Dollars ($25,000.00).

21.     Venue and jurisdiction are properly vested in this Court.

## **FACTUAL ALLEGATIONS**

22.     Plaintiffs hereby restate, re-allege, and incorporate each and every allegation contained in paragraphs above as though fully set forth herein.

23.     That on the date of the incident on or about August 9, 2017, the decedent, who had just turned 17 years old, was confined to the Defendant MUSKEGON RIVER YOUTH HOME, INC.

24.     That the Decedent had been confined to MUSKEGON RIVER YOUTH HOME, INC. which is a private child caring institution since April 13, 2017.

25.     Decedent had mental health issues, which Defendants were aware of, including depression, anxiety, suicidal history, mental health hospitalizations and ADHD, for which he was prescribed medication.

26.      Decedent had talked about killing himself and when Defendant staff heard about it, they did nothing about it.

27.     On August 9, 2017, during the morning hours, the decedent punched a wall at the facility after he was told by his juvenile justice worker that his girlfriend had a new boyfriend.

28.      When the decedent was told of his girlfriend seeing someone else, the decedent broke down and started crying prior to getting up and punching the wall.

29.     Defendant CONKLIN saw decedent was upset and was yelling and screaming.

30.     Defendant CONKLIN heard the decedent punching the wall while Defendant CONKLIN was in the "chow hall".

31.     The decedent was heard stating "I can't do this anymore."  This was approximately 11:40 a.m.

32.     Decedent was taken to his room and was seen sitting on his bed with his head down.

33.     At one point, Defendant KYLE VINCENT entered the room to see decedent.

34.     Defendants KYLE AND/OR KENNETH VINCENT saw decedent crying in his room and that he was visibly upset.

35.     Defendant BOZEMAN was made aware that the decedent had punched a wall.

36.     Defendant BOZEMAN was specifically made aware that the decedent 'had a rough day because his girlfriend wanted to split up with him and he was really upset.

37.      Additionally, the log specifically noted that decedent was sad and had a break up.

38.     At approximately 3:30 p.m. on the date of the incident, Defendant BEARD found the decedent with a sheet around his face and/or neck.

39.     Defendant BEARD simply told the decedent not to do that again and left the room. None of the Defendants, including Defendant BEARD took any action with respect to the decedent's suicide attempt and instead ignored the decedent, and failed to monitor him.

40.     Defendants BRANDON BEARD, JENNIFER BISSET, STEVE REED, DENNY ARMINGTON, STAFF KYLE VINCENT, STAFF DANIEL CONKLIN, STAFF ADAM BOZEMAN, SUSAN HAVELKA, and MATTHEW LORENZ allowed the decedent to go to his room by himself and further failed to monitor and/or supervise him.

41.     Despite all Defendants knowing that Decedent was suicidal, they took no action to supervise, monitor, follow the licensing requirements and/or protect the Decedent and allowed the Decedent to be in his room alone for a substantial period of time without any supervision, knowing that he was suicidal.

42.     No staff looked into the Decedent's room for over 30 minutes after he had gone into his room.

43.      Defendants failed to conduct 15 minute checks on the decedent, which is the requirement for checking residents while in a self-timeout.

44.      At 6:16:42 Defendant BOZEMAN reached the doorway of the decedent's room and found him hanging.

45.     Defendant BOZEMAN on the video appears to be looking at the hinge side of the door to the room that decedent is hanging from, by a sheet, and walks in and out of the room without providing any assistance to the decedent.

46.     Defendants BOZEMAN remains in the hallway outside of the room in which the decedent is hanging.

47.     At 6:17:25 Defendant BOZEMAN has his hand on the door knob and appears to be pushing the door and looking at the hinge side of the door, while the decedent is still hanging.

48.      At 6:17:54 Defendant KYLE VINCENT reaches the doorway to the room where the decedent is still hanging.

49.    At 6:18:01 Defendant KYLE VINCENT enters the room where the decedent is still hanging.

50.    Defendant BOZEMAN remains standing outside the door of the room.

51.    At 6:19:21 Defendant BOZEMAN walked into the room in which the decedent was hanging.

52.    The Defendants failed to cut the decedent down and to remove the object he was using in his attempted suicide in direct violation of the facilities Emergency Response Procedures.

53.    Defendants BOZEMAN and KYLE VINCENT failed to take any action to secure the object the decedent was attempting to use for self harm in violation of state law; failed to take the body down, and did not attempt any life-saving efforts.

54.    When the decedent was finally cut down from his hanging position, he had a faint pulse.

55.    The decedent was taken to the Helen Devoss Children's Hospital where he remained in a coma for 6 days until his death on August 15, 2017.

56.    The decedent's death was a direct and proximate result of the actions and inactions of Defendants.

57.    The Michigan Department of Health and Human Services found that Defendants failure to take any action to secure the object the decedent was using

for self harm to be a repeat violation from special investigation 2015CO208039 and special investigation 2017C0208037.

58.     That Defendants KRUITHOFF, BISSETT, KENNETH VINCENT, JR., REED, ARMINGTON, CONKLIN, BOZEMAN, HAVELKA, LORENZ and BEARD were all aware and/or should have been aware that Defendant KYLE VINCENT was not qualified to hold the position of Supervisor of Direct Care as he did not hold the qualifications required under State of Michigan Licensing Rule 400.4120, but placed him in that position any way and in violation of state law.

59.     That during its investigation into this matter, the Michigan Department of Health and Human Services found numerous violations of the rules, regulations, and laws by Defendants which were the proximate cause of the death of the decedent.

60.     That the Michigan Department of Health and Human Services found that Defendants failed to abide with contractual requirements of the ratio of staff to residents; that defendant's failed to perform 15 minute checks as required; failed to properly maintain the facility and premises; failed to upload required information on each resident including clinical notes; had accepted youths into the facility even when it was overcrowded; failed to keep an accurate daily census of the youth in its facility; failed to keep a complete staff roster; failed to keep appropriate and complete room check documentation and failed to follow the facility's rules and policies.

61.    The State of Michigan Licensing Rule 400.4127(4) requires that the facility perform variable interval checks no longer than fifteen minutes apartwhen a resident is out of line of site.  When Defendant KRUITHOFF was advised of this during the investigation into this matter by the Michigan Department of Health and Human Services, she stated that she did not remember this rule although previously acknowledging this rule in a prior investigation.

62.    Furthermore, it was found that Defendant KRUITHOFF failed to update and operate the facility under the rule book, revised in 2015.

63.    Additionally, Defendants including MUSKEGON RIVER YOUTH HOME, INC. repeatedly failed to comply with the Licensing Rules, contract requirements, and Michigan Department of Health and Human Services policies.

64.    Moreover, the investigation revealed that each and every Defendant failed to review the decedent's file and/or his background information which noted that the decedent had previous suicide attempts, suicidal threats, psychiatric hospitalizations, and that he suffered from emotional issues and more severe depression during unstructured time.

65.    The investigation also revealed that each and every one of the Defendants failed to follow the rules, requirements and policies, and failed to provide the required supervision to the decedent which directly and proximately caused the death of the decedent.

66.     That during the investigation into the death of the decedent, Defendants' attempts to cover up the death by reporting the following in the Muskegon River Youth Home, Inc. Critical Incident Report of August 9, 2017, (written by Defendant KRUITHOFF), "Summary: Resident A has no history of suicide attempts, ideation or psychiatric placements." The false statements were made intentionally, recklessly, and with deliberate indifference.

67.     That as the proximate result of the actions and inactions described herein, Plaintiffs' Decedent and the Estate suffered injuries and damages which include, but are not limited to, the following:

    a.    Death;

    b.    Reasonable medical, hospital, funeral and burial expenses;

    c.    Conscious pain and suffering, physical and emotional;

    d.    Humiliation and / or mortification;

    e.    Mental anguish;

    f.    Economic damages;

    g.    Loss of love, society, and companionship;

    h.    Loss of gifts, gratuities, and other items of economic value;

    i.    Financial support;

    j.    Parental and spousal guidance, training, and support;

    k.    Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

    l.    Attorney fees and costs pursuant to 42 USC § 1988;

m.   Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT I
## DELIBERATE INDIFFERENCE
## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC § 1983 – AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

68.   Plaintiffs hereby restate, re-allege, and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

69.   Plaintiffs' Decedent was taken into custody by Defendants on April 13, 2017 and as such they had responsibility for the care of Decedent.

70.   The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution prohibit cruel and unusual punishment and provide for Due Process to individuals taken into custody.

71.   That the acts and/or omissions by Defendants as described above were taken under color of law, and were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with deliberate indifference to Plaintiffs' Decedent's well-being and serious medical and mental needs.

72.     That each of the Defendants possessed a sufficiently culpable state of mind in denying medical and mental health care for the Decedent's serious medical and mental health needs.

73.     That each of the Defendants were aware of the Decedent's serious medical and mental health needs, and were aware that the Decedent needed immediate medical and mental health treatment, but ignored the risk to Decedent by failing to provide the same.

74.     That Decedent's serious medical and mental health conditions were one that was so obvious that even a lay person would have easily recognized the necessity for a doctor's immediate attention.

75.     That the law was clearly established at the time of this incident that Defendants were required to provide the individuals in their care and custody with immediate medical and mental health treatment for serious medical/mental health needs.

76.     Defendants acted objectively unreasonable in failing to do so.

77.     Defendants are not entitled to qualified immunity.

78.     That, in addition, Defendants adopted, promulgated, encouraged, condoned, and/or tolerated official customs, policies, practices, and/or procedures, including  failing to train, discipline, and/or supervise its employees/agents, which were the motivating force for the individual Defendants' conduct as described

herein, such that the same also amounted to a deliberate indifference to Plaintiff's Decedent's well-being and serious medical and mental health needs.

79.     That the conduct of the aforementioned Defendants, individually, corporately and as agents of said individual Defendants, deprived Plaintiff's Decedent of his clearly established rights, privileges, and immunities guaranteed to her under the United States Constitution, specifically those set forth under the 4th, 8th and 14th Amendments , as evidenced by the following particulars:

   a.   Failing to observe and check on Decedent as Decedent exhibited a serious medical/mental health need and was in distress;

   b.   Failing to request medical and mental health care and assistance for Decedent when it was known that Decedent was suffering severe depression and when Decedent was found hanging;

   c.   Failing to secure medical assistance as Decedent was attempting suicide and hanging in his room;

   d.   Failing to request medical and mental health treatment when Decedent was attempting suicide and hanging in his room;

   e.   Ignoring Decedent's statements indicating that he would harm himself ;

   f.   Failing to request and delaying medical help when it was apparent that Decedent was unresponsive;

   g.   Failing to transfer the Decedent to the hospital for treatment, monitoring, observation, and supportive measures;

   h.   Placing Decedent alone in a room, and failing to observe and/or monitor him, notwithstanding the known risks;

   i.   Failing to perform necessary and required checks ;

j.      Delaying necessary and immediate medical treatment to the Decedent resulting in horrific pain, suffering and death;

80.     That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

a.      Death;

b.      Reasonable medical, hospital, funeral and burial expenses;

c.      Conscious pain and suffering, physical and emotional;

d.      Humiliation and / or mortification;

e.      Mental anguish;

f.      Economic damages;

g.      Financial support;

h.      Loss of love, society, and companionship;

i.      Loss of gifts, gratuities, and other items of economic value;

j.      Parental and spousal guidance, training, and support;

k.      Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

l.      Attorney fees and costs pursuant to 42 USC § 1988;

m.      Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT II
## CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 4th, 8TH AND 14th AMENDMENTS
## ALL INDIVIDUAL DEFENDANTS

81.    Plaintiffs hereby restate, re-allege, and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

82.    Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, at all times relevant, Plaintiff's Decedent had a right to be free from cruel and unusual punishment while incarcerated under the custody and control of Defendants.

83.    Notwithstanding duties to prevent the cruel and unusual punishment of Decedent while under their custody and control, Defendants knowingly incarcerated Decedent under conditions posing and exacerbating a substantial risk of serious harm to the Decedent.

84.    Defendants repeatedly and willfully failed to provide Decedent with supervision, monitoring, treatment, medical and mental health care and/or delayed medical and mental care that was necessary to treat his serious medical/mental health needs, and Defendants repeatedly and willfully failed to provide such treatment, care and assistance although they were on notice of Decedent's serious

medical and mental health needs, and although they knew that in so doing, they were depriving Decedent of basic needs and violating his constitutional rights.

85.     Throughout his detention, the treatment, failure to provide treatment and the delay of treatment to the Decedent by each and every Defendant, constituted cruel and unusual punishment in violation of Decedent's 4th, 8th and 14th Amendment rights.

86.     The acts or omissions by all Defendants, as more specifically described above, were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with deliberate indifference to Plaintiffs' Decedent's well-being.

87.     That the law was clearly established at the time of this incident.

88.     Defendants' actions were not objectively reasonable.

89.     Defendants are not entitled to qualified immunity.

90.     The conduct of all of the Defendants, individually, corporately, and as agents of said individual Defendants, deprived Plaintiff's Decedent of his clearly established rights, privileges, and immunities guaranteed her under the United States Constitution, specifically those set forth under the 4th, 8th and 14th Amendments to same, as evidenced by the following particulars:

        a.     Failing to protect the Decedent from unnecessary harm;

        b.     Failing to provide reasonable safety to the Decedent;

c.   Failing to monitor and/or supervise Decedent, which would have alerted Defendants to the fact that Decedent was attempting suicide;

d.   Failing to immediately cut down the Decedent when he was discovered hanging;

e.   Failing to provide immediate medical treatment to the Decedent when he was discovered hanging;

f.   Failing to request medical help when Decedent suffered from severe depression;

g.   Failing to request medical help for Decedent, when it was apparent that Decedent was unresponsive;

h.   Failing to admit the Decedent to the hospital for treatment, workup, monitoring, observation, and supportive measures for his serious medical/mental health needs;

i.   Failing to maintain supervision of Decedent ;

91.   The above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiffs' Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

a.   Death;

b.   Reasonable medical, hospital, funeral and burial expenses;

c.   Conscious pain and suffering, physical and emotional;

d.   Humiliation and / or mortification;

e.   Mental anguish;

f.   Economic damages;

     g.     Financial support;

     h.     Loss of love, society, and companionship;

     i.     Loss of gifts, gratuities, and other items of economic value;

     j.     Parental guidance, training, and support;

     k.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

     l.     Attorney fees and costs pursuant to 42 USC § 1988;

     m.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT III
## 42 U.S.C. § 1983 – MONELL LIABILITY- DEFENDANTS MUSKEGON RIVER YOUTH HOME, INC. AND DEFENDANTS KRUITHOFF, BEARD, BISSETT, VINCENT, REED AND ARMINGTON IN THEIR OFFICIAL CAPACITIES

92.    Plaintiffs hereby restate, re-alleges, and incorporate each and every allegation contained in the paragraphs above.

93.    At all times relevant, the above-named Defendants failed to train, discipline, and supervise staff members responsible for the custody of youths under their care, and/or encouraged the staff members to violate federal and state laws

without regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

94.     At all times relevant, Defendants refused to provide the staff with any training, discipline and supervision with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; refused to provide staff members with supervision and discipline to protect the constitutional rights of citizens; refused to require staff members to follow policies and procedures, rules and regulations and state and federal law relating to the rights of the youths in their care and custody; refused to require and provide monitoring of members at least every 15 minutes, supervision and protection, as well as immediate aid for attempted suicides and providing immediate medical care for serious medical and mental health needs.

95.     At all times relevant, Defendants knew or should have known that the policies, procedures, training, supervision and discipline of the staff members were inadequate for the tasks that each Defendant was required to perform.

96.     At all times relevant, there was a complete failure to train, supervise and discipline the staff members, and the training, supervision and lack of discipline were so reckless and deliberately indifferent that future violations of the constitutional rights of citizens to be free from violations of the Fourth, Eighth and

Fourteenth Amendments to the United States Constitution as described in the preceding paragraphs were certain to occur.

97.     At all times relevant, Defendants were on notice and knew that the failure of training, discipline, and/or supervision of the staff members and/or contractual employees with regard to the constitutional rights of citizens to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, as described in the preceding paragraphs were inadequate and would lead to the violation of the constitutional rights of the youths in their care and custody.

98.     At all times relevant, Defendants MUSKEGON YOUTH RIVER HOME, INC., KRUITHOFF,   BEARD, BISSET, VINCENT, REED and ARMINGTON'S    response to this knowledge was so inadequate as to show a complete disregard for whether the staff members would violate the constitutional rights of citizens to be free from violations of the Fourth and Eighth Amendments to the United States Constitution.

99.   Defendants   MUSKEGON   YOUTH   RIVER   HOME,   INC., KRUITHOFF, BEARD, BISSET, REED, VINCENT, and ARMINGTON implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical and mental healthneeds and cruel and unusual punishment of citizens, and knew or should have known that such treatment would deprive inmates of their constitutional rights.

100.   At all times relevant, as established by the violations determined to be in existence at the time of this incident, there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, as described in the preceding paragraphs.

101.   At all times relevant, Defendants MUSKEGON YOUTH RIVER HOME, INC., KRUITHOFF, BEARD, BISSET, REED, VINCENT, and ARMINGTON knew or should have known that there was a clear and persistent pattern of violations of citizen's constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, as described in the preceding paragraphs.

102. Defendants MUSKEGON YOUTH RIVER HOME, INC., KRUITHOFF,   BEARD, BISSET,   REED, VINCENT, and ARMINGTON tolerated the staff members' repeated violations of the Fourth and Eighth Amendments to the United States Constitution, which allowed the staff members to continue to engage in this unlawful behavior.

103. Defendants MUSKEGON YOUTH RIVER HOME, INC., KRUITHOFF, BEARD, BISSET, REED, VINCENT, and ARMINGTON refused to discipline, corrections, and staff members who violated citizens= constitutional rights to be free from violations of the  Fourth and Eighth Amendments to the United States Constitution; failed to fully investigate allegations of misconduct,

looked the other way, and, thus, tacitly encouraged such behavior. In doing so, Defendants MUSKEGON YOUTH RIVER HOME, INC., KRUITHOFF, BEARD, VINCENT, BISSET, REED and ARMINGTON condoned, ratified or encouraged staff members to violate the Fourth and Eighth Amendment to the United States Constitution as a matter of policy.

104.   The deliberate conduct of the aforementioned Defendants, corporately, and as agents of said individual Defendants, were the moving force behind the injuries sustained by the decedent.

105.   The deliberate conduct of the Defendants deprived Plaintiffs' Decedent of his clearly established rights, privileges, and immunities guaranteed to him under the United States Constitution, specifically those set forth under the 4th and 8th Amendments to same, as evidenced by the following particulars:

  a.   Permitting Plaintiff's Decedent and other youths to be subject to cruel and unusual punishment, as well as to have them treated in a manner consistent with deliberate indifference to their serious medical/mental health needs, in violation of the Eighth Amendment;

  b.   Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or care giving responsibilities over Decedent to ensure Decedent's serious medical/mental health needs, as well as that of other youths, were timely and properly tended to, and to ensure the above breaches / deviations were not committed.

  c.   Tolerating the conduct of individuals within the aforementioned facility having custodial and/or care when it was apparent that there was a pattern of treatment of Decedent and other youths in a manner consistent with deliberate indifference to  serious medical/mental health needs and in violation of her Eighth

Amendment protection against cruel and unusual punishment his

    d.    Failing to discipline the individuals within the aforementioned facility having custodial and/or care when it was apparent that they were treating Decedent and other youths in a manner consistent with deliberate indifference by failing to enforce and/or follow the required licensing rules, laws and regulations in violation of the Eighth Amendment protection against cruel and unusual punishment.

106.   That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiffs' Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

    a.    Death;

    b.    Reasonable medical, hospital, funeral and burial expenses;

    c.    Conscious pain and suffering, physical and emotional;

    d.    Humiliation and / or mortification;

    e.    Mental anguish;

    f.    Economic damages;

    g.    Financial support;

    h.    Loss of love, society, and companionship;

    i.    Loss of gifts, gratuities, and other items of economic value;

    j.    Parental and spousal guidance, training, and support;

    k.    Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

    l.    Attorney fees and costs pursuant to 42 USC § 1988;

m.   Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

<u>COUNT IV</u>
<u>STATE LAW CLAIMS OF NEGLIGENCE,</u>
<u>GROSS NEGLIGENCE, AND/OR WANTON</u>
<u>AND WILLFUL MISCONDUCT</u>

107.   Plaintiffs hereby restate, re-allege, and incorporate each and every allegation contained in the paragraphs above as if fully set forth herein.

108.   Defendants had knowledge of each and every factual allegation set forth above.

109.   That in taking custody of Plaintiff's Decedent, Defendants  undertook and owed a duty to Decedent to make reasonable efforts to care for him in a reasonable and prudent manner, to exercise due care and caution, and in such operation as the rules of the common law require and in accordance with the customs, policies and procedures.

110.   Each and every Defendant had a duty to protect the Decedent while the decedent was in their care and custody.

111.   Each and every Defendant had a duty to give aid to the Decedent as he was attempting suicide, including, but not limited to immediately cutting his body down and immediately providing him with emergency care.

112.   Defendants breached each and every duty owed to Plaintiff's Decedent.

113.   That notwithstanding the aforementioned duties, the aforementioned Defendants took into custody, incarcerated, and monitored Decedent in an extremely careless, negligent, grossly negligent, reckless, and wanton and willful manner without concern whatsoever for her safety and welfare, and failed to tend to Decedent's serious medical and mental health needs, including, but not limited to, the following particulars by way of illustration and not limitation:

    a.    Failing to observe and check on Decedent;

    b.    Failing to request medical  and mental health care and assistance for Decedent;

    c.    Failing to secure medical assistance while Decedent was hanging from the door;

    d.    Failing to request medical and mental health help well before the death of the Decedent;

    e.    Failing to arrange for a mental health professional to see and evaluate Decedent in a timely manner when Decedent was experiencing severe depression;

    f.    Failing to transfer the Decedent  to the hospital for treatment, workup, monitoring, observation, and supportive measures as described herein;

g.      Allowing Decedent to remain unsupervised and alone in a room notwithstanding his known serious medical and mental health needs;

h.      Failing to monitor the Decedent who was known to be suffering;

i.      Failing to request and arrange for timely medical and mental health attention when it was known Decedent had an immediate serious medical and mental health needs;

j.      Failing to maintain observation and/or supervision of Decedent;

k.      Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or care giving responsibilities over Decedent to ensure Decedent's serious medical and mental health needs were timely and properly tended to, and to ensure the above breaches / deviations were not committed.

114.   That the above described actions and/or inactions were negligent so extreme also amounted to gross negligence, specifically conduct so reckless as to demonstrate a substantial disregard for whether an injury resulted to the Decedent.

115.   Defendants are not entitled to governmental immunity based upon their actions.

116.   The above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to her and her Estate, including but not limited to the following:

a.      Death;

b.      Reasonable medical, hospital, funeral and burial expenses;

c.   Conscious pain and suffering, physical and emotional;

d.   Humiliation and / or mortification;

e.   Mental anguish;

f.   Economic damages;

g.   Financial Support;

h.   Loss of love, society, and companionship;

i.   Loss of gifts, gratuities, and other items of economic value;

j.   Parental guidance, training, and support;

k.   Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

l.   Attorney fees and costs pursuant to 42 USC § 1988;

m.   Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiffs request that this Honorable Court enter a Judgment in favor of Plaintiffs and against Defendants in an amount in excess of Seventy Five Thousand ($75,000.00) Dollars, plus costs, interest and attorney fees.

Respectfully submitted by:
*FIEGER LAW*

BY:*/s/ Gina U. Puzzuoli*
     GEOFFREY N. FIEGER (P30441)
     GINA U. PUZZUOLI (P37992)
     Attorneys for Plaintiff
     19390 W. 10 Mile Road
     Southfield, MI 48075
Dated: June 8, 2018          g.puzzuoli@fiegerlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA HUTCHINSON AND
JOHN VANDERPOOL, as Personal
Representatives of the Estate of
Jon Vanderpool, Deceased,

                                Case No. 18-

     Plaintiff,                 Hon:

v.

MUSKEGON RIVER YOUTH HOME, INC.,
DAWN KRUITHOFF, BRANDON BEARD,
JENNIFER BISSET, KENNETH VINCENT, JR.,
STEVE REED, DENNY ARMINGTON,
STAFF KYLE VINCENT, STAFF DANIEL CONKLIN,
STAFF ADAM BOZEMAN, SUSAN HAVELKA, and
MATTHEW LORENZ, Individually and in their Official
Capacities, Jointly and Severally,

     Defendants.

_____

GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
Attorney for Plaintiffs
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
g.fieger@fiegerlaw.com

_____

## **PLAINTIFFS' DEMAND FOR TRIAL BY JURY**

     NOW   COMES   Plaintiffs,   LISA   HUTCHINSON   and   JOHN

VANDERPOOL Personal Representatives of the Estate of JON VANDERPOOL

deceased, by and through their attorneys, Fieger, Fieger, Kenney & Harrington, P.C., and hereby request trial by jury in this matter.

Fieger, Fieger, Kenney & Harrington, P.C.

BY:*/s/ Gina U. Puzzuoli*
     GEOFFREY N. FIEGER (P30441)
     GINA U. PUZZUOLI (P37992)
     Attorneys for Plaintiff
     19390 W. 10 Mile Road
     Southfield, MI  48075
Dated:  June 8, 2018     (248) 355-5555